616 So.2d 298 (1993)
Herwins NOE
v.
STATE of Mississippi.
No. 90-KA-1062.
Supreme Court of Mississippi.
March 25, 1993.
*299 Mark E. McLeod, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Mary Margaret Bowers, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
PRATHER, Presiding Justice, for the Court:
Herwins Noe prosecutes this appeal from his conviction of murder and the life sentence imposed by the trial court. Noe contends that the Hinds County Circuit Court erred in (1) denial of his constitutional right to a speedy trial, (2) denial of his motion for a directed verdict, and (3) the admission into evidence of allegedly gruesome postmortem (autopsy) photographs of the victim, which deprived him of a fundamentally fair trial. Finding no error, we affirm.

I. FACTS
The defendant, Herwins Noe, was a resident of Miami, Florida, and a purveyor of cocaine. The victim, Steve Wilson, was a twenty-three (23) year old resident of Jackson, Mississippi, and a prospective purchaser. Wilson was shot by Noe as Wilson attempted to steal a bag of crack cocaine.
On Tuesday, March 28, 1989, officers of the Jackson Police Department were summoned to the scene of a shooting that took place at the Christian Brotherhood Apartments in Jackson, Mississippi. Upon their arrival, they found twenty-three (23) year old Steve Wilson lying unconscious and face down outside one of the apartment buildings. Wilson had been shot once in the chest with a pistol.
Bonita Washington, a resident of building # 20, testified that prior to the shooting, Noe, known to her and others as "Miami," was dealing coke from inside her apartment. Steve Wilson had come to this location for the purpose of purchasing cocaine. Wilson snatched a bag of cocaine from the defendant and attempted to leave without paying for it. As he did, the defendant unzipped his jacket, pulled a gun from underneath the garment, and hotly pursued Wilson. While at the top of the stairway near Washington's apartment, Noe fired the first shot. Washington later heard a second shot.
Kenneth Earl Bailey testified that he had taken the defendant to the apartments where Bonita Washington lived and that Noe had furnished him with cocaine.
Evette Wells, an ear and eyewitness to the fatal shooting, testified that she had gone to Bonita Washington's apartment where she purchased $150 worth of cocaine from the defendant. Wells testified that Noe fired the first shot from in front of the door to Washington's apartment. The second shot was fired after Wilson had fallen to the ground near one of the apartments and was attempting to return the bag of cocaine to Noe. According to Wells, Noe stood over Wilson and fired down at him. After shooting Wilson, Noe turned and walked away.
Joseph Greer was inside Washington's apartment with Wilson shortly before the shooting. He observed Wilson grab the bag of cocaine from the defendant and saw Noe pull what appeared to be a.357 from his jacket. Wilson ran past Greer pursued closely by Noe. When Noe reached the top of the stairway, a shot was heard. Greer heard a second shot while leaving the area.
Robert Martin, Hinds County Coroner, testified that Wilson died from massive bleeding caused by a single gunshot wound to the left chest which exited his right chest.
Detective Mike Presley testified the Jackson Police Department, after obtaining a description of "Miami" from witnesses at the scene, issued a warrant for Noe's arrest. Noe was arrested two months later *300 on June 1, 1989, in Miami, Dade County, Florida.

II. ISSUES

A. Speedy Trial
Noe contends the State violated his constitutional right, as opposed to his statutory right, to a speedy trial when a period of four hundred seventy five (475) days elapsed between his arrest in Miami, Florida, and his trial in Hinds County for murder. Noe seeks dismissal of the charges.
The constitutional right to a speedy trial, unlike the statutory right created by Miss. Code Ann. § 99-17-1 (Supp. 1992), attaches when a person has been effectively accused of a crime. Box v. State, 610 So.2d 1148 (Miss. 1992); Beavers v. State, 498 So.2d 788 (Miss. 1986). Noe's constitutional right to a speedy trial attached on June 1, 1989, the date he was arrested. Jenkins v. State, 607 So.2d 1137, 1138 (Miss. 1992); Handley v. State, 574 So.2d 671, 674 (Miss. 1990); Jaco v. State, 574 So.2d 625, 629 (Miss. 1990). He was tried on September 18, 1990, 475 days (approximately 16 months) following his arrest.
When a defendant's constitutional right to a speedy trial is at issue, the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is applicable. The factors to consider are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay.
This Court recognized in Beavers v. State, supra, 498 So.2d 788, 790 (Miss. 1986), that
[n]o mathematical formula exists according to which the Barker weighing and balancing process must be performed. The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of nonpersuasion. In the end, no one factor is dispositive. The totality of the circumstances must be considered.
The following chronology of events will be useful in our Barker analysis:

 March 28, 1989 Noe's Offense
 June 1, 1989 Noe's Arrest in Miami, Florida
 June 10, 1989 Noe's Extradition to Mississippi
 August 8, 1989 Noe's Indictment
 August 28, 1989 Indictment Served On Noe
 September 5, 1989 Noe's Arraignment
 May 22, 1990 First Trial Setting
 May 22, 1990 Continuance Granted to Noe
 July 18, 1990 Attorney Milner Dismissed
 Attorney McLeod Appointed
 July 31, 1990 Hearing on Motion to Dismiss
 Filed by Noe pro se
 September 14, 1990 Hearing on Motion to Dismiss
 Filed by attorney McLeod
 September 18, 1990 Trial

We turn now to an analysis of the four Barker factors.

(1) Length of the Delay:
The first factor is only a triggering device and we do not look at the reason for the delay and to whom it is attributed. The length of the delay from arrest to trial was 475 days.[1]
In Smith v. State, 550 So.2d 406, 408 (Miss. 1989); Beavers v. State, supra, 498 So.2d 788 (Miss. 1986); Burgess v. State, 473 So.2d 432 (Miss. 1985); Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985); and Perry v. State, 419 So.2d 194, 199 (Miss. 1982), each defendant, in the wake of a Barker analysis, was discharged following delays of 370, 423, 480, 298, and 566 days, respectively.
In Smith v. State, 550 So.2d at 408 we said "that any delay of eight (8) months or longer is presumptively prejudicial." See also Jenkins v. State, supra, 607 So.2d at 1139; Adams v. State, 583 So.2d 165, 168 (Miss. 1991). The 475 days delay in the case sub judice fails the test and is presumptively *301 prejudicial.[2] Therefore, the length of the delay is not an excessive or inordinate delay.

(2) Reason for the Delay:
The extradition of Noe from Miami to Mississippi required from June 1, 1989 to June 10, 1989. In addition, a substantial portion of the delay (119 days) was embraced by a continuance granted to the defendant on May 22, 1990, the date this case was originally set for trial. After Noe had serious disagreements with his lawyer, counsel was substituted during a hearing conducted two months later on July 18, 1990. All agree that 119 days elapsed between the date of the continuance and the date of trial.
Continuances granted to the defendant toll the running of our speedy trial statute and should not be counted against the State. Flores v. State, 574 So.2d 1314, 1318 (Miss. 1990) citing Vickery v. State, 535 So.2d 1371, 1375 (Miss. 1988). Accordingly, 119 days must be deducted from the total number of days between Noe's arrest and trial. The length of the delay not attributable to either the defendant or his lawyer is 356 days or approximately 12 months.
However, defense counsel was substituted on July 18, 1990, because of certain disagreements arising between Noe and Lisa Milner, his original attorney. Milner testified she had a "substantial amount of material" to turn over to Noe's new lawyer who was appointed on July 18th. An additional two month delay until September 18, 1990, to allow substituted counsel sufficient time to prepare for trial was neither excessive nor unreasonable. Even if this case was delayed longer than it should have been, we find this factor still favors the State.

(3) Assertion of Right:
Lisa Milner, Noe's original attorney, testified during the hearing conducted on July 18, 1990, that at no time did Noe indicate to her that he wanted a speedy trial. The defendant, in fact, indicated to Milner he did not want to go to trial until December of 1990. Noe testified he never really wanted to wait until December to go to trial but that he agreed with what his lawyer was doing.
Noe filed, pro se, a motion to dismiss for want of a speedy trial but not until after he had been granted a continuance in May of 1990. A second motion to dismiss sought for the identical reason was filed by Mr. McLeod, Noe's new lawyer, less than a week prior to trial. It is enough to say that a fair reading of all the testimony reflects that Noe went nearly an entire year following his arrest on June 1, 1989, without asserting his right to a speedy trial. If asserted at all, it was not done until after Noe had been granted a continuance. Again, this factor favors the State.

(4) Prejudice to the Defendant:
Noe testified he lost contact with certain alibi witnesses residing in Miami, Florida, who could have attested to his presence in Miami on the day of the homicide. Noe gave the names of these witnesses to Lisa Milner, his original lawyer, as well as to McLeod, his new attorney.
Noe testified that his girlfriend, a resident of Georgia, could have testified that on the Sunday prior to the murder on Tuesday, he left the state of Georgia headed for Miami. Other potential witnesses would have allegedly accounted for Noe's presence in Miami on the day of the shooting. Noe testified that the girlfriend's location was unknown to him and that his other witnesses had returned to the island of Trinidad.
Minimum effort was made by Noe or his investigator to locate or contact the witnesses who had moved to Trinidad. Noe's investigator was hired a week prior to trial *302 and given the task of finding the witnesses. He made telephone calls and sent registered letters to the last known addresses provided by the defendant, but he did not personally go to Miami and did not check the possibility that some of the witnesses could be located in Trinidad.
Noe testified he kept in touch with his witnesses for nine months but lost contact with them around the last of May 1990, or the first of June. The circuit judge found as a fact that these witnesses would have been available to testify on May 22, 1990, the day the trial was originally scheduled to begin. But for the continuance granted at the defendant's request, there would have been no reason to complain.
No mention of this matter was made in Noe's motion for a new trial filed a week post-verdict. Under the circumstances of this case, the presumption of prejudice has been substantially diluted, if not completely dissolved, and this factor favors the State.
On balance, an analysis of the Barker factors favors the State. While there was some delay, the length of the delay was not excessive. Moreover, there was both a reasonable and legitimate justification for large portions of the delay for which the State was not at fault; the defendant's assertion of his right was late, and Noe's testimony concerning his alibi witnesses only raised the specter of prejudice. Adams v. State, 583 So.2d 165 (Miss. 1991); Wiley v. State, 582 So.2d 1008 (Miss. 1991); Handley v. State, supra; Jaco v. State, supra. This Court will not allow speculative harm to tip the scales in Noe's favor. Accordingly, this Court rejects the defendant's contention that he was denied his constitutional right to a speedy trial.

B. Directed Verdict
Noe assails the sufficiency of the evidence as opposed to its weight. See Barnwell v. State, 567 So.2d 215, 217-18 (Miss. 1990); May v. State, 460 So.2d 778, 781 (Miss. 1984). He seeks final discharge because of alleged shortcomings in the testimony of the State's witnesses.
In judging the sufficiency of the evidence on a motion for a directed verdict or request for peremptory instruction, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. Clemons v. State, 460 So.2d 835 (Miss. 1984); Forbes v. State, 437 So.2d 59 (Miss. 1983); Bullock v. State, 391 So.2d 601 (Miss. 1980). If, under this standard, sufficient evidence to support the jury's verdict of guilty exists, the motion for a directed verdict and request for peremptory instruction should be overruled. Brown v. State, 556 So.2d 338 (Miss. 1990); Davis v. State, 530 So.2d 694 (Miss. 1988).
Evette Wells saw and heard the fatal shooting. Her testimony, standing alone, was sufficient to take this case to the jury. Ms. Wells made a positive identification of the victim after viewing a postmortem photograph of Steve Wilson, and she positively identified Noe during trial as both "Miami" and the person who shot and killed Wilson. Accepting her testimony as true, it is clear the question concerning legal sufficiency of the State's proof is not even close. This is especially true where, as here, the testimony of Wells was corroborated in material particulars by the testimony of Bonita Washington and Kenneth Earl Bailey. Their testimony makes it quite clear Noe was present at the apartments armed with a pistol and that he ran out of the building in hot pursuit of Wilson.
Noe complains that the testimony of Ms. Wells and other witnesses for the state was inconsistent and self-contradictory. In Maddox v. State, 230 Miss. 529, 93 So.2d 649, 650 (1957) citing Manning v. State, 188 Miss. 393, 195 So. 319 (1940), we find the following language applicable to this state of affairs:
Seldom do witnesses agree upon every detail. Indeed, their failure to do so is often strong evidence each is trying to accurately portray the situation as he saw it, and that is to the credit, rather than the discredit of the witnesses. Manning v. State, 188 Miss. 393, 195 So. 319. * * * * * *
*303 Finally, this Court has held "[t]he jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory and sincerity." Jones v. State, 381 So.2d 983, 989 (Miss. 1990). The State's proof was more than enough to support the jury's verdict of guilty. Accordingly, the trial judge did not err in denying Noe's motion for a directed verdict.

C. Gruesome/Inflammatory Postmortem (Autopsy) Photographs of Victim
Noe contends he is entitled to a new trial because of the admission into evidence during the State's case-in-chief of three color autopsy photographs, one depicting the victim's face and the others the location of his wounds. Noe claims the photographs were not only gruesome and inflammatory, but served no useful evidentiary purpose because the defendant was willing to stipulate that the victim was Steve Wilson and that Wilson died as a result of a gunshot wound to the chest. Where, as here, photographs have probative value, stipulations such as this are not an impediment to admissibility.
One of the three autopsy photographs objected to by Noe was introduced during the testimony of Evette Wells, the only ear and eyewitness to the fatal shooting. It depicts the face of the victim with an endotracheal tube protruding from Wilson's mouth.
The two other photographs were introduced during the testimony of coroner Martin and depict the entrance and exit wounds. They were used by Martin, who was present when the photographs were taken, to explain and illustrate the location and size of the gunshot wounds sustained by Wilson.
The photographs introduced here were neither inordinately gruesome nor inflammatory. They served a meaningful evidentiary purpose in establishing the identity of the man shot by Noe and also the size, nature, and location of the gunshot wounds described by coroner Martin. More importantly, the photographs corroborated the testimony of Evette Wells that at the time Wilson was shot he was lying on the ground defenseless, reaching up with his hand in a conciliatory gesture while seeking to return the package of cocaine he had taken from Noe. The probative value of the three photographs outweighed any prejudicial effect they were likely to engender. See Berry v. State, 575 So.2d 1 (Miss. 1990).
It is well settled in this state that the admission of photographs is a matter left to the sound discretion of the trial judge and that his decision favoring admissibility will not be disturbed absent a clear abuse of that judicial discretion. Gardner v. State, 573 So.2d 716 (Miss. 1990); Sudduth v. State, 562 So.2d 67 (Miss. 1990). "A review of our case law indicates that the discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." [emphasis supplied] Williams v. State, 544 So.2d 782, 785 (Miss. 1987). A photograph, even if gruesome, grisly, unpleasant, or even inflammatory, may still be admissible if it has probative value and its introduction into evidence serves a meaningful evidentiary purpose. Sudduth v. State, 562 So.2d 67, 69 (Miss. 1990); Lanier v. State, 533 So.2d 473, 484 (Miss. 1988); Koch v. State, 506 So.2d 269, 271 (Miss. 1987); Cardwell v. State, 461 So.2d 754, 760 (Miss. 1984).
However, while a trial judge has a great deal of discretion in the admission of photographs, this discretion is not unfettered. Indiscriminate use of autopsy photographs depicting a corpse upon which a medical technician or pathologist has used the tools of his trade to puncture, sever, dissect, and otherwise traumatize body parts is ill-advised. Autopsy photographs are admissible only if they possess probative value. McNeal v. State, 551 So.2d 151, 159 (Miss. 1989).
In Welch v. State, 566 So.2d 680, 685 (Miss. 1990), we found no probative value in autopsy photographs of a dissected cadaver which demonstrated neither the circumstances *304 surrounding death, the cruelty of the crime, the location of the wounds nor the extent of the force and violence used.
This Court held, on the other hand, in Marks v. State, 532 So.2d 976 (Miss. 1988), that admission of nude autopsy photographs was not an abuse of judicial discretion where the photographs clearly depicted the number, placement and multiplicity of stab wounds, the extent of the force and violence used, and where the photographs had probative value with respect to the defendant's state of mind.
Two recent cases where autopsy photographs were admissible to establish cause of death are Alexander v. State, Miss.Sup. Ct. Cause No. 89-KA-0948 decided January 21, 1993 [Not Yet Reported]; and Mackbee v. State, 575 So.2d 16, 32 (Miss. 1990).
A condition precedent to the admission into evidence of autopsy photographs of the victim is that the photographs have probative value, i.e., a tendency to prove some relevant fact. The photographs under scrutiny here had probative value. Accordingly, their admission into evidence was not an abuse of judicial discretion. All assignments of error are meritless.
NOE'S CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT ARE AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, ROBERTS and SMITH, JJ., concur.
NOTES
[1] The facts in the case at bar bear no resemblance to those found in Doggett v. United States, 505 U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), where the Supreme Court of the United States held that a delay, caused by the government's negligence, of eight-and-one-half years between Doggett's indictment and his arrest, violated Doggett's Sixth Amendment right to a speedy trial.
[2] "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, ... it is part of the mix of relevant facts, and its importance increases with the length of the delay." Doggett v. United States, supra, 505 U.S. at ___, 112 S.Ct. at 2693, 120 L.Ed.2d at 531.