## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00537-SCT

*CANDRID MAMON, a/k/a CANDY MAMON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/97 |
| TRIAL JUDGE: | HON. JOHN LESLIE HATCHER |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/7/99 |

### BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.

### McRAE, JUSTICE, FOR THE COURT:

¶1. This case affords us our first opportunity to discuss Mississippi Code Annotated § 97-1-6. Appellant Mamon was convicted below of burglary under Miss. Code Ann. § 97-17-33 and of directing or causing a felony to be committed by a person under the age of seventeen pursuant to § 97-1-6. Mamon appeals his conviction on Counts I, II, IV, V, and VI citing insufficient evidence as grounds for reversal. We affirm.

### I.

¶2. On February 11, 1997, the grand jury of Quitman County indicted Candrid Mamon, A/K/A "Candy Mamon," for 6 counts—Count I for burglary and Counts II-VI in violation of Miss. Code Ann. § 97-1-6 for directing the felony of burglary to be committed by children under the age of seventeen, namely Marcus Stokes, Ronnie Rhodes, Dale Clark, Charles Stokes, and Daryl Stokes. As to Counts II, III, IV, V, and VI, Miss. Code Ann. § 97-1-6 (1994) states that:

> In addition to any other penalty and provision of law, any person over the age of seventeen (17) who shall direct or cause any person under the age of seventeen (17) to commit any crime which would be a felony if committed by an adult shall be guilty of a felony . . . .

¶3. Trial was held March 10-11, 1997. At trial, the State was granted a motion to dismiss Count III

regarding Ronnie Rhodes because the State discovered he was seventeen years of age at the time of the alleged burglary. Then, the jury found Mamon guilty of Counts I, II, IV, V, and VI. Mamon filed a Motion For Judgment Of Acquittal Notwithstanding Verdict Or In The Alternative New Trial, which was denied on April 17, 1997. Judge Hatcher adjudged that Mamon was to serve seven years under the control of the Mississippi Department of Corrections (MDOC) for Count I followed by fifteen years, ten of which were suspended subject to certain conditions, for Counts II, IV, V, and VI. Mamon appealed arguing that:

> DUE TO INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT, THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A DIRECTED VERDICT OF ACQUITTAL AS TO COUNTS I, II, IV, V, AND VI.

## II.

¶4. On September 1, 1996, Mamon was driving a blue Toyota loaned to him by Mikita James. Ronnie and Dale entered the car after Ronnie stopped Mamon. The threesome drove around, then picked up Charles and Daryl before finally picking up Marcus. That evening the group passed the Sledge city hall, which was dimly lit inside. Dale testified:

> [H]e [Mamon] was like, "I sure like that computer." And then Ronnie and them was like, "We will get it for you, man."

> And then Candy was like. "All right, then. Y'all get it, we'll  then we'll split the money."

¶5. Dale, Daryl, and Ronnie, whom possessed a .22 pistol, went over to the city hall, while Mamon, Charles, and Marcus were "looking"as Charles phrased itfrom the other side of the railroad tracks. Mamon gave Ronnie a gun to shoot the lock off the door, but the gun did not function properly as it fired only one shot. From a tree across the road, Daryl watched Ronnie shoot the lock. When use of the gun proved unsuccessful, they went back to Mamon for further instructions; Mamon admonished them to attempt to knock off the door lock with something, such as the gun, or to hit the window with some rocks and knock it out. Daryl served as look-out while Dale and Ronnie returned to the city hall per instructions. The door would not budge, so Daryl futilely threw rocks at the window before Ronnie hit the lock with the gun and then fired another shot. Daryl went back to Mamon, explained the situation, and was told: "we ain't leaving Sledge until we get something." Someone came by and Mamon had everyone hide in the ditch until the car departed.

¶6. Daryl testified that Dale kicked in the window, then Mamon said, "go on back over. Go on over there and help them." Marcus testified, regarding the other youngsters, Mamon " told them to go on over there, they wouldn't get in much trouble because they are minors." Nonetheless, Daryl apparently hesitated. After Mamon's statement, Dale, Daryl, Ronnie, and Charles congregated at the city hall, where they all worked to take things. Charles, who never entered the city hall, stated "pass it out the window, man, I'll get it"; then, Daryl passed the copy machine out the window. Daryl climbed over a shelf and plexiglass to penetrate an enclosed area within which the computer was housed. Charles, while Marcus and Mamon were apparently looking out, attained the top of the computer. The group sought to avoid leaving fingerprints by using a towel, possessed by Dale or Ronnie, and by using gloves Mamon provided for use by the burglars. They stayed inside five or six minutes.

¶7. The loot was carried to the car where Mamon and Marcus waited. Mamon opened the trunk into

which the computer and shotgun were placed. According to Charles, also taken were a gun, a telephone, and a camera. Charles testified that the group then left the city hall and drove to Mamon's Crenshaw home, where they, including Charles and, perhaps, Marcus, unloaded the items into Mamon's house. Mamon then took Daryl, Charles, Marcus, and Dale to Daryl's mother's home. Mamon and Ronnie left in a blue car.

¶8. At five or six o'clock on the morning of September 2, Mamon and Ronnie drove to Mamon's uncle's house, that of David Hibbler, where Mikita was staying. While Mamon went inside his uncle's house, Mikita and Ronnie went across town so Mikita could call his employer via a pay phone and tell them he would not be in that day. Between ten and thirty minutes later, Mamon, Ronnie, Mikita, and David went to Mamon's house, where Mikita dropped off Mamon. Apparently, Mikita and David then took Ronnie home and returned to Mamon's house. At Mamon's house, David saw "some computers," among other things. Regarding the items, David testified that Mamon mentioned "something about going to Memphis to get rid of [them], but then he rode around, and I reckon made some phone calls or something, and he was waiting on someone from Senatobia to come down and look at the computers or something." David testified that when he asked Mamon where he procured the items, Mamon mentioned that the less he knew, the better off he was.

¶9. Upon Mamon's request, David and Mikita placed the computer and copier in the car, then the threesome drove to Long Town to get rid of the items, but failed to sell them to the George Ruffin household. Later, the entire group returned to Mamon's house, then Mikita and David took the computer and copying machine back to the Ruffin home where they sold the computer and keyboard to Joyce Ruffin for $150.00 and five crack rocks. Mikita testified that he sold the copying machine the next day to Robert Sanders for $100.00.

¶10. On the morning of September 2, Quitman County Sheriff Jack Harrison investigated an apparent burglary at the Sledge City Hall. On September 3, an inventory was taken from which it was gleaned that the computer, monitor, base station, copying machine, police ("C.B.") radio, telephone, two cameras, and a shotgun were missing.

¶11. At the trial, Marcus identified the defendant, Mamon, as being present in the courtroom. Charles, Daryl, and Marcus testified that Mamon planned the alleged burglary. Charles and Daryl further testified that but for Mamon's plan and statement he wanted the computer, they would not have acted.

### III.

¶12. As to the law, when judging the sufficiency of the evidence on a motion for a directed verdict, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. *See Noe v. State*, 616 So. 2d 298, 302 (Miss. 1993). If, under this standard, sufficient evidence to support a jury verdict of guilty exists, the motion for a directed verdict should be overruled. *Id*.

¶13. Reasonably, matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987). Once a jury has found a defendant guilty, however, this Court's authority on appeal is by law considerably constricted. *Davis v. State*, 586 So. 2d 817, 819 (Miss. 1991). When reviewing the sufficiency of the evidence, this Court looks at the trial court's ruling on the most recent occasion when such sufficiency was challenged. *Green v. State*, 631 So. 2d 167, 174 (Miss. 1994). We must, as to each element of the offense, consider all of the evidence--not

just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. *Cooper v. State*, 639 So. 2d 1320, 1324 (Miss. 1994). Credible evidence which is consistent with the guilt must be accepted as true. *Wetz*, 503 So. 2d at 808. The recipient of the verdict, here the State, must be given the benefit of all reasonable inferences that may be drawn from that evidence. *Smith v. State*, 646 So. 2d 538, 542 (Miss. 1994). Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. It matters not that we are not convinced beyond a reasonable doubt of the defendant's guilt. *Davis*, 586 So. 2d at 819. We must refrain from reversal so long as there is credible evidence in the record from which the jury could have found or reasonably inferred each element of the offense charged. *Id.* It equally matters not that the evidence overwhelmingly establishes defendant's guilt of other offenses. *Id.* We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence fails to adequately undergird conviction of the particular offense for which the defendant has been indicted and tried such that reasonable and fair-minded jurors could only find the accused not guilty. *Id.*; *Duplantis v. State*, 708 So. 2d 1327, 1340-41 (Miss. 1998); *and Collier v. State*, 711 So. 2d 458, 461 (Miss. 1998).

¶14. Mamon argues that the State failed to offer any in-court identification of Mamon as the burglar and director of Dale's, Charles's, and Daryl's actions. Yet, this Court has stated:

> The character and adequacy of evidence of identification of an accused in a criminal case is primarily a question for the jury, provided the evidence could reasonably be held sufficient to comply with the requirement of proof beyond a reasonable doubt. The jury need not be controlled by the number of witnesses testifying to the identification of an accused. Identification based on the testimony of a single witness, if complying with the standard in criminal cases, can support a conviction, even though denied by the accused. The jury can appraise the truthfulness of an asserted alibi. In short, positive identification by one witness of the defendant as the prepertrator [sic] of the crime may be sufficient . . . .

*Passons v. State*, 239 Miss. 629, 634, 124 So.2d 847, 848 (1960), *cited by White v. State*, 507 So. 2d 98, 102 (Miss. 1987). Hence, Marcus Stokes's in-court identification of Mamon is sufficient. Everyone in the trial referred to Mamon as "Candy," Candrid," or "Yams." Thus, there was plenty of identification evidence to support guilt. There is no error.

¶15. Mamon also argues that the State failed to prove that he directed or caused Marcus Stokes to burglarize the Sledge City Hall. Mamon identifies Marcus Stokes's testimony that Marcus neither went to the actual city hall building nor did he carry anything from the car to Mamon's house. Even the trial court, while denying Mamon's motion for a directed verdict, stated that the State was "pretty thin here."

¶16. Yet, there is sufficient evidence for the jury to have found Mamon guilty of causing Marcus to burglarize. Particularly, Charles Stokes testified that he thought Marcus both served as a lookout and helped unload the car at Mamon's home. Given Charles's testimony, there is no reversible error as to this sub-issue.

¶17. Mamon further argues that the State was required, yet failed, to prove beyond a reasonable doubt that Mamon, through words or force, directed Charles Stokes to commit the burglary and that, as a result thereof, Charles committed such crime. Mamon points out that Charles said he was "not really" trying to be a lookout, despite the fact he was "looking." Mamon further identifies that Charles on his own volition walked up to the city hall, while others were inside, and attained the computer, rather than being forced to

do so by Mamon.

¶18. Yet, Mamon fails to touch the key points. The driver, Mamon, was over seventeen and the mastermind of the incident. Indeed, Charles's testimony is decisive on the issue of Mamon's guilt regarding this count:

Q. Did you hear anybody else plan this burglary other than Candy?

A. No, sir.

Q. Would you have gone over there at all if this had not been planned by Candy?

A. No, sir.

Q. Would you have done that?

A. No, sir.

Q. Had you even thought about it?

A. No, sir.

¶19. Further, Mamon fails to consider that Charles did look. Charles did not attempt to leave. He actually assisted in the crime by looking and carrying a portion of the computer. Regardless of Charles's role, he did not attempt to arrest the situation. He simply let it continue and helped in his own fashion. He admits to acting and to having been persuaded by Mamon. There is no error as to this sub-issue for which the jury could have found guilt.

## IV.

¶20. There is sufficient evidence for the jury to have found Mamon guilty of all the counts he appeals. Mamon was properly convicted for burglary and directing or causing a felony to be committed by a person under the age of seventeen. Mamon's conviction is

**¶21. COUNT I: CONVICTION OF BURGLARY AND SENTENCE OF SEVEN (7) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNTS II, IV, V AND VI: CONVICTION OF DIRECTING OR CAUSING A FELONY TO BE COMMITTED BY A PERSON UNDER THE AGE OF SEVENTEEN (17) AND SENTENCE OF FIFTEEN YEARS, WITH TEN YEARS SUSPENDED AFTER APPELLANT HAS SERVED FIVE YEARS, WITH CONDITIONS, AFFIRMED. APPELLANT SHALL PAY RESTITUTION IN THE AMOUNT OF ONE THOUSAND THREE HUNDRED FIFTY-FOUR DOLLARS ($1,354.00). THE SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY WITH ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. SENTENCES IN COUNTS II, IV, V AND VI SHALL RUN CONCURRENTLY BUT CONSECUTIVELY WITH SENTENCE IN COUNT I.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**