910 So.2d 1182 (2005)
Donald Scott SHEPPARD, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02507-COA.
Court of Appeals of Mississippi.
September 6, 2005.
*1184 Pamela Lynn Huddleston, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Donald Scott Sheppard was convicted of manslaughter by a Jones County jury. He was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections, with fifteen years to serve and five years on post-release supervision. On appeal, Sheppard alleges that the trial court erred in allowing investigator Kevin Flynn to give expert testimony without first qualifying him as an expert witness and erred in allowing the introduction of certain photographs into evidence. Sheppard also contends that the jury's verdict was against the sufficiency and weight of the evidence. Finding no reversible error, we affirm Sheppard's conviction.

FACTS
¶ 2. On the evening of August 2, 2001, Sheppard was out drinking at a local bar with his wife Sheila Walters when they became involved in an altercation with each other.[1] Timothy Barnes, the victim, and his friend Sheila Mahaffey were also present at the bar and witnessed the altercation between Sheppard and his wife.[2] Shortly thereafter, Walters left Sheppard at the bar and went home alone. What transpired next is the subject of dispute.
¶ 3. At trial, Sheppard testified that when he arrived home, Walters was preparing to leave the house. Sheppard further testified that he and Walters then began arguing again, and at that time, he decided to take his gun to his father's house because Walters had previously been shot by a boyfriend during an argument.[3] Sheppard stated that when he stepped outside, he observed Barnes pulling up into his driveway. He testified that although he fired a warning shot in the air in an effort to get Barnes to leave, Barnes ignored the shot and proceeded to drive further into the yard. Sheppard stated that when Barnes pulled up to where he was standing in the yard, Barnes rolled down his window and informed him that he was there to check on him and Sheila. Sheppard alleged that he and Barnes then began to exchange words, and that he demanded Barnes to leave his property. *1185 Sheppard contends that as he was walking toward Barnes's truck, he stumbled and fell backwards, causing the gun to accidentally discharge and hit Barnes. However, in a statement given to police on the night of the incident, Sheppard alleged that Barnes asked to see his gun, and as he was walking toward the truck to give Barnes the gun, he stumbled over a tree stump and fell backwards, causing the gun to accidentally discharge.
¶ 4. Mahaffey however gave a different version of events. She testified that before Walters left the bar, Walters asked Barnes to come to her home to pick her up. Mahaffey stated that she agreed to ride with Barnes to get Walters, and as she and Barnes were turning into Sheppard's driveway, they heard a noise that sounded like a firecracker. Mahaffey testified that they could see Sheppard standing in his driveway, and that when they arrived further in the yard, Barnes rolled his window down and shook Sheppard's hand. Mahaffey contends that Sheppard then pointed the gun inside of Barnes's window and shot him. She stated that she did not remember seeing Sheppard stumble, nor did she recall hearing Barnes ask Sheppard to see his gun.
¶ 5. An autopsy revealed that Barnes suffered a single gunshot wound to his upper left arm, and that he died as a result of massive bleeding when the bullet traveled to his chest and struck his aorta. Dr. Steven Haynes, the pathologist who performed Barnes's autopsy, testified that the barrel of the gun was approximately one foot away from Barnes's shoulder when it was fired. Sheppard was subsequently indicted for murder, and as previously stated, was convicted of manslaughter. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Kevin Flynn's Testimony
¶ 6. Sheppard first contends that the trial court erred in allowing Kevin Flynn, a former investigator with the Jones County Sheriff's Department, to give expert testimony regarding the gun's trigger tension without first qualifying him as an expert witness.[4] The State however counters that the trial court did not err in allowing Flynn's testimony because the defense first elicited the testimony on cross-examination, thus entitling the prosecution to further elaborate on the matter on redirect. The State also argues that because Flynn testified that he had personally fired the gun, it was appropriate for him to give testimony regarding his perception of the gun's trigger tension.
¶ 7. The record reflects that on direct-examination, Flynn testified that he recovered from the scene of the crime a spent shotgun shell and a single-shot twenty gauge shotgun. Flynn then provided testimony regarding the sequence of events that were necessary to fire the gun. The following exchange then transpired between Flynn and Sheppard's attorney on cross-examination:

*1186 Q: This is my question to you. Since this is the issue in the case as to what happened at the truck on the second shot, we've heard testimony from you about it's a single shot. Have to load, have to cock it, finger on the trigger. Did you send the shot gun to the crime lab and have the trigger tested as to the tension it would take to squeeze it for it to discharge? Because guns, as I understand it, have different tensions. Some will just touch and go off, and some will need a good squeeze. And my fingers may be stronger than a little old lady's and your fingers may be stronger than mine.
But there's still an industry standard as to the tension of the trigger so that it becomes more objective. Are you aware of that standard? Squeezing the trigger and it having a certain score as to it being discharged?
A: Yes, sir.
Q: Okay. Since you are familiar with that standard, did you send it to the crime lab so that we could see if that trigger would take just a slight jerk to discharge it or if it really had to be squeezed? Did you do that?
A: No, sir.
Q: Thank you.
Mr. Buckley: No further questions.
Thereafter, Flynn gave the following testimony on redirect:
Q: Officer Flynn, did you cock the gun at anytime afterwards and test fire it or pull the trigger yourself?
A: Yes, sir, I did.
Q: Did you note it being what we call a hair trigger at any point
Mr. Buckley: Objection, Your Honor. That requires expert testimony and the crime lab. That has not been furnished to us previously to this occasion.
THE COURT: Overruled.
Q: You are familiar with that gun and those types of guns, are you not?
A: Yes, sir.
Q: Would you say based on your experience that the trigger once it is cocked was abnormally easy to pull or hard to pull or would be normal?
A: In my experience with them, as with firearms, it was just as natural as any of the other ones I've ever shot.
Q: And I believe it's called a single action. I get them mixed up. Single action, or double action. One is where you can pull the trigger, regardless of whether the cock or hammer in it was fired. That's called what?
A: Double action.
¶ 8. We note from the outset that Flynn's testimony regarding the gun's trigger tension was first elicited by Sheppard's attorney on cross-examination as the State contends. The law on this issue is well-settled. "When [a] `defense attorney inquires into a subject on cross-examination of the State's witness, the prosecutor on rebuttal is unquestionably entitled to elaborate on the matter.'" De La Beckwith v. State, 707 So.2d 547, 591 (¶ 172) (Miss.1997)(quoting Hart v. State, 639 So.2d 1313, 1317 (Miss.1994)). As a result, the prosecution was well within its province to further elaborate on the matter by exploring Flynn's testimony on redirect. Accordingly, the trial judge did not err in allowing Flynn's testimony.
¶ 9. However, notwithstanding our previous finding, we find that Flynn's testimony was nevertheless admissible as a lay opinion under Mississippi Rule of Evidence 701. Under Rule 701, a witness may testify to opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of his testimony or the determination of a fact in issue, and (c) not based *1187 on scientific, technical, or other specialized knowledge.
¶ 10. As reflected in the record, Flynn's testimony was not only based upon his personal perception of the gun's trigger tension, but was also based upon his past experiences with guns similar to the one used in the shooting. Flynn's testimony was further helpful to a determination by the jury of whether the shooting was accidental or intentional. Therefore, Sheppard's argument to the contrary is without merit.

(2) Photographs
¶ 11. Sheppard next contends that the trial court erred in admitting certain photographs into evidence. He argues that the photographs were gruesome, did not possess any probative value, and served only to inflame the jury. The State however maintains that the trial court did not err in admitting the photographs because they contained evidentiary value and were relevant to the adjudication of Sheppard's guilt.
¶ 12. "The admission of evidence, including photographs, is left to the sound discretion of the trial judge." Minor v. State, 831 So.2d 1116, 1120 (¶ 12) (Miss.2002) (citing Noe v. State, 616 So.2d 298, 303 (Miss.1993)). "`A photograph, even if gruesome, grisly, unpleasant, or even inflammatory, may still be admissible if it has probative value and its introduction into evidence serves a meaningful evidentiary purpose.'" Id. Photographs have evidentiary value where they aid in describing the circumstances of the killing and the corpus delicti, describe the location of the body and cause of death, and supplement or clarify witness testimony. Westbrook v. State, 658 So.2d 847, 849 (Miss.1995) (additional citations omitted).
¶ 13. During its examination of Flynn, the prosecution sought to introduce two photographs into evidence, one depicting the victim's deceased body on a slab in the hospital morgue, and the other depicting blood splattered on the inside frame of the victim's truck door. The defense objected, arguing that the photographs were unnecessary because they had stipulated the shooting. The trial court overruled the defense's objection and admitted the photographs into evidence without further comment.
¶ 14. Sheppard contends that the trial judge committed reversible error in admitting the photographs into evidence without first conducting an on-the-record balancing test under Mississippi Rule of Evidence 403, which provides that otherwise admissible evidence may be excluded where the risk of undue prejudice substantially outweighs the probative value of the evidence. We note that although it is a well-established principle of law that a trial court is required to balance the potential for prejudice against the probative value of evidence, this Court has nevertheless held that a trial court's failure to articulate the balancing test on the record does not require reversal. See Brink v. State, 888 So.2d 437, 451 (¶ 42) (Miss.App.2004) (citing Hodge v. State, 801 So.2d 762, 772 (¶ 32) (Miss.App.2001)). Similarly, the Mississippi Supreme Court has found harmless error in a trial court's failure to perform a Rule 403 balancing test on the record. See McKee v. State, 791 So.2d 804, 810 (¶ 23) (Miss.2001). Therefore, the trial judge's failure to conduct an on-the-record balancing test in the instant case did not constitute reversible error.
¶ 15. Nevertheless, we have reviewed both photographs and find that their probative value substantially outweighs any danger of unfair prejudice. As the State contends, the photograph depicting the victim's body was not only relevant to prove *1188 the corpus delicti, but was also relevant to show the location of the victim's gunshot wounds and the gun at the time of its discharge. This, in turn, was relevant to the issue of whether the shooting was accidental or intentional. Similarly, the photograph depicting the bloodied inside of the victim's truck was relevant to prove that Barnes was shot while seated in the driver's seat of his truck. While the photographs may have been somewhat unpleasant, we do not find them so gruesome as to inflame the jury or subject Sheppard to an unfair trial. Accordingly, we find that the trial court did not abuse its discretion in admitting the photographs into evidence.

(3) Sufficiency and Weight of the Evidence
¶ 16. In his final assignment of error, Sheppard challenges the sufficiency and weight of the evidence. He specifically contends that the trial court erred in denying his motion for a directed verdict, peremptory instruction, and JNOV.[5] Sheppard also contends that the trial judge erred in denying his request for a new trial.
¶ 17. Sheppard first argues that the evidence was insufficient to sustain his manslaughter conviction. When the sufficiency of evidence is challenged, the evidence is viewed and tested in a light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citing Esparaza v. State, 595 So.2d 418, 426 (Miss. 1992)). This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Id. We find that ample evidence was offered by the State in support of Sheppard's conviction. The evidence presented at trial clearly showed the killing of a human being without authority of law with the use of a dangerous weapon. Further, the State presented substantial evidence, including eyewitness testimony and photographic evidence, contradicting Sheppard's position that the shooting was accidental. Thus, accepting the evidence in the light most favorable to the State, the jury was justified in finding Sheppard guilty of manslaughter.
¶ 18. We next address Sheppard's argument that the verdict was against the overwhelming weight of the evidence. Our standard of review for claims that a conviction is against the overwhelming weight of the evidence or that the trial court erred in not granting a motion for a new trial has been stated as follows:
[This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
Todd v. State, 806 So.2d 1086, 1090(¶ 11)(Miss.2001) (quoting Crawford v. State, 754 So.2d 1211, 1222(¶ 30)(Miss.2000)).
¶ 19. Though two different accounts of the incident were given at trial, we are not convinced that the jury's verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would *1189 sanction an unconscionable injustice. "The jury [was] charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses, and determining whose testimony should be believed." McClain, 625 So.2d at 781 (citing Lewis v. State, 580 So.2d 1279, 1288 (Miss.1991)). Consequently, we find the trial court did not abuse its discretion in denying Sheppard's motion for a new trial. Therefore, this issue is without merit.
¶ 20. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS TO SERVE AND FIVE YEARS ON POST-RELEASE SUPERVISION AND PAYMENT OF PUBLIC DEFENDER'S FEES IN THE AMOUNT OF $1,000, RESTITUTION IN THE AMOUNT OF $10,500, AND PAYMENT TO THE VICTIM'S COMPENSATION FUND IN THE AMOUNT OF $3,500 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The record reflects that at the time of the incident, Sheppard and Walters had been married approximately one week. The record further reflects that prior to their marriage, Walters and the victim had been involved in a romantic relationship, and Sheppard and the victim had once been close friends.
[2] For the sake of clarity, we will refer to Sheila Walters as "Walters" and Sheila Mahaffey as "Mahaffey".
[3] Sheppard's trailer and his father's house were located near each other on the same piece of property.
[4] In support of his argument, Sheppard cites Cotton v. State, 675 So.2d 308 (Miss.1996), wherein the Mississippi Supreme Court reversed a defendant's aggravated assault conviction when a detective was permitted to give expert testimony regarding a gun's mechanical features without first being qualified as an expert witness. We however find that Cotton is factually distinguishable, and therefore inapplicable to the instant case. As will be discussed in a later portion of this opinion, we find that Flynn's testimony, unlike the testimony in Cotton, was based upon his personal knowledge and perception, therefore his testimony did not constitute expert testimony.
[5] Although Sheppard contends that the trial judge erroneously refused his request for a peremptory instruction, the record reflects that Sheppard did not specifically request that the trial judge grant him a peremptory instruction, but essentially requested that the jury only receive manslaughter instructions.