IN THE SUPREME COURT OF MISSISSIPPI
NO. 2002-KA-01344-SCT

*BARON L. EASTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/18/2002 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES A. WILLIAMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/06/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND DICKINSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

**PROCEDURAL HISTORY**

¶1.     On November 15, 2001, Baron L. Easter (Easter) was indicted by a Lauderdale County grand jury for the sell or transfer of 20.25 grams of cocaine to Agent Neil Grogan (Agent Grogan) of the Mississippi Bureau of Narcotics (MBN) and an unnamed confidential informant for $800, within 1,500 feet of a public park. The indictment also alleged that Easter had two prior convictions on felony drug charges and was therefore subject to enhanced sentencing under Miss. Code Ann. § 41-29-147 as a habitual offender under Miss.

Code Ann. § 99-19-81 (Rev. 2000). Attorney J. Steward Parrish (Attorney Parrish) was appointed to represent Easter.

¶2. Easter's trial was held on June 17 and 18, 2002, before Circuit Court Judge Robert W. Bailey. Easter had previously been granted a continuance on March 26, 2002, to allow him time to retain his own counsel. Before trial on June 17, 2002, Easter asked the trial court to allow him to represent himself. The trial court denied the request for a continuance based on the previous continuance. Easter agreed to allow Attorney Parrish to represent him. The trial court further expressed concern as to Easter's request to represent himself due to the extensive sentence he could face because of the enhancements sought by the State.

¶3. Due to the difficulty in representing Easter, the State and the defense, outside the presence of the trial judge, conducted plea bargain negotiations on the record before trial on June 17, 2002. The State's original plea offer was 20 years to serve as a habitual offender, meaning day for day. Attorney Parrish got the State to amend the plea offer to 15 years nonhabitual or 30 years with 17 suspended, 13 to serve and 5 years post-release supervision. Attorney Parrish advised his client to take the offer of 15 years as a non-habitual offender. Easter insisted on standing trial, rejecting his attorney's advice.

¶4. Easter stood trial, and the jury found Easter guilty of the sale of cocaine. Easter was sentenced as a habitual offender based on his two previous separate felony convictions of possession of cocaine on January 30, 1997, and delivery of marijuana on January 30, 1997. The trial court dismissed the State's enhancement request for sale of cocaine within 1,500 feet of a park. Easter was sentenced to serve a term of 40 years in the custody of the Mississippi Department of Corrections not to be reduced or suspended. The trial court

ordered that Easter not be eligible for early release or probation in accordance with Miss. Code Ann. § 99-19-81 as a habitual offender. Easter was further fined $5,000 and assessed a $300 appearance bond fee, $100 crime lab fee and $248 court cost. Easter filed a motion for J.N.O.V. or for a new trial which was denied by the trial court. Easter now appeals to this Court.

## FACTS

¶5.     Agent Grogan testified that on May 22, 2001, he worked undercover with a confidential informant, Chris Thompson (Thompson), in Lauderdale County, Mississippi, to purchase cocaine from sellers in the area. Agents Allen Ward (Agent Ward) and James Regan (Agent Regan) also worked with Thompson on May 22, 2001. Thompson had previously been arrested for possession of cocaine, and he agreed to assist the MBN as a confidential informant in a buy-bust sting operation to get his drug source.

¶6.     Thompson telephoned Easter to purchase $800 worth of cocaine. The meeting place was set at the Apple Dollar Store on Highway 19. Easter then telephoned Thompson back and changed the location to McDonald's. Both telephone conversations were recorded. Thompson testified that he and Easter knew each other's cell phone numbers. Thompson gave Easter's name to the MBN. Thompson had known Easter approximately a year and a half. Thompson stated that they referred to each other as "B" for Baron and "C" for Chris. Thompson testified he recognized and identified Easter's voice on the telephone. Agent Grogan testified that he was present when Thompson telephoned Easter. Thompson testified that the tape was an accurate and unaltered recording of the conversation. References to

3

other transactions on the tape recordings were deleted based on the defense's objection before the tape was admitted. After the deletions, the defense did not object to the tape.

¶7. Before going to the exchange, Thompson and his vehicle were searched by one of the agents to verify that there were no drugs present. Thompson wore a wire transmitter to the buy.

¶8. Agent Grogan rode with Thompson to the buy. Agents Ward and Regan provided back-up. When Thompson and Agent Grogan arrived at the McDonald's parking lot, Thompson spotted Easter's vehicle next door in the parking lot at Trucker's Supply. Thompson pulled over to Trucker's Supply and parked next to Easter's vehicle, driver's side to driver's side. Agent Grogan gave Thompson the $800 to buy the cocaine. Thompson gave the money to Easter. Easter threw a zip-lock bag, containing aluminum foil wrapped around the cocaine, wrapped in a camouflage bandana. Thompson handed the cocaine to Agent Grogan.

¶9. Agent Grogan testified he was approximately 6 or 7 feet from Easter, and it was about 6:25 p.m. and still daylight outside. Agent Grogan identified Easter at trial as sitting at the counsel table. Thompson also testified that he had no doubt that it was Easter who was at the exchange. Thompson also identified Easter in the courtroom.

¶10. Brandi Goodman, with the Mississippi Crime Laboratory in Meridian, testified that her testing on the substance determined that the State's exhibit 2 contained cocaine with a total weight of 20.25 grams. Easter did not testify at trial, choosing to exercise his right to remain silent.

¶11. At the conclusion of the State's case, Easter made a motion for directed verdict that the State did not meet its prima facie burden as to the sale of cocaine or sale within 1,500 feet of a park. The trial court denied the motion as to the sale, but it sustained Easter's motion for directed verdict as to the sale within 1,500 feet of the park.

¶12. Easter was found guilty and was sentenced to an enhanced sentence as a habitual offender to 40 years in the custody of the Mississippi Department of Corrections. The trial court denied Easter's motion for J.N.O.V. or new trial. Easter now appeals to this Court raising the following issues:

    **I.**     **Whether Easter was denied a fair trial as a result of the trial court's comments.**

    **II.**     **Whether the trial court should have granted a mistrial.**

    **III.**     **Whether there was credible, substantial evidence to support the jury's verdict.**

    **IV.**     **Whether the trial court violated *Batson v. Kentucky*.**

    **V.**     **Whether Easter received effective assistance of counsel.**

## LEGAL ANALYSIS

### I. Trial Court's Comments

¶13. Easter argues that he was denied a fair trial based on comments made by the trial court during voir dire; Agent Grogan's testimony; and Thompson's testimony.

¶14. In *Thompson v. State*, 468 So.2d 852, 853-54 (Miss. 1985), quoting *Green v. State*, 97 Miss. 834, 53 So.2d 415 (1910), this Court stated:

> 'It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors

watch closely his conduct, and give attention to his language, that they may, if possible ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury, to avoid prejudice to either party.'

The Court further stated:

The great danger, particularly in a criminal case, is that the weight and dignity of the court accompanies each question or comment, although not so intended by the judge, and are very likely to be interpreted by the jury as the court's approval of the witness and her testimony, thereby lending unity to it and thus diverting the jurors' attention from their responsibility of deciding the case from the evidence, untainted, as heard by them from the witness stand.

*Thompson*, 468 So.2d at 854.

## A. Voir Dire

¶15. Easter contends that the trial court denied him a fair trial and unduly prejudiced his case by commenting during voir dire of the prospective jury panel as to "presumption of innocence." Easter alleges that this comment corroborated the description stated on close by the State, enhancing the State's position with the jury. In order to examine the alleged reversible error, it is necessary to see the trial court's remarks. The record reflects the following statement by the trial court:

Now, this is a criminal case. It's not a civil case. There are certain general concepts that apply in all criminal cases in our judicial system. The first concept deals with a term that you will hear used throughout the trial. You will also see it used in the written instructions on the law that will be given to you at the conclusion of the trial by -- that will be given by the Court, and that term is called the "presumption of innocence." That is, every defendant is presumed to be innocent until they are convicted by a jury. And I make this statement to you because a lot of times, attorneys during voir dire before you've heard any evidence or received any testimony will ask you, how many of you think my client is or could be guilty because they're here on trial? And my answer to that is every defendant at this stage of the proceedings are presumed to be innocent until they're convicted by a jury. Obviously, you

6

haven't heard any testimony, so technically if the trial was to stop now, you would be required to find every defendant not guilty.

¶16. This Court finds that the trial court's opening remarks on voir dire did not constitute reversible error. Easter's argument is without merit. Moreover, the record reflects that the defense never offered a contemporaneous objection at trial nor raised the issue with the trial court in his motion for a new trial. In *Johnson v. Gray*, 859 So.2d 1006, 1015 (Miss. 2003), this Court stated:

> There is a general requirement that objections must be raised at the trial level. *In re S.A.M.*, 826 So.2d 1266, 1277 (Miss. 2002); *In re V.R.*, 725 So.2d 241, 245 (Miss. 1998). See *Riley v. Doemer*, 677 So.2d at 743 n. 3; *Smith v. State*, 572 So.2d 847, 848 (Miss. 1990); *Burney v. State*, 515 So.2d 1154, 1156-57 (Miss. 1987). This Court has stated that "[i]f no contemporaneous objection is made, the error, if any, is waived." *Dorrough v. Wilkes*, 817 So.2d 567, 577 (Miss. 2002) (quoting *Walker v. State*, 671 So.2d 581, 597 (Miss. 1995); *Hill v. State*, 432 So.2d 427, 439 (Miss. 1983)).

Therefore, we find that this issue is without merit.

### B.    Agent Grogan's Testimony

¶17. Easter argues that the trial court erred in allowing Agent Grogan to testify as to whether it was standard operating procedure for people involved in a drug transaction to disguise what they were discussing. Easter claims that the trial court allowed Agent Grogan to supply an expert opinion without being qualified as an expert. The record reflects the following exchange:

| | |
|---|---|
| Mr. Davis [State]: | Agent Grogan, were you present when the confidential informant placed a phone call to the defendant on this date? |
| Agent Grogan: | Yes, sir. |
| State: | Were you able to listen to the conversation that ensued between them? |
| Agent Grogan: | Yes, sir. |

7

| | |
|---|---|
| State: | Now, when these, how many of these types of conversations have you witnessed in law enforcement would you say? |
| Agent Grogan: | Probably hundreds I imagine. |
| State: | All right. Is it normal or is it kind of standard operating procedure for people involved in that to kind of disguise what they're talking about, or do they come out and say, I will sell you two ounces of cocaine? |
| Mr. Parrish [Defense]: | Your, Honor, at this time, we're going to object. This is calling for an expert opinion, and he hasn't been tendered as an expert at all. |
| State: | Judge, he can give his personal opinion based on his experience as a law enforcement officer. |
| The Court: | All right. Well, I'll let you voir dire him on his qualifications if you'd like to do that now. |
| Defense: | Your, Honor, we'd object. He has not been disclosed to the defendants as an expert witness. He's been disclosed to us as a fact witness. If he's going to start testifying as to his opinion about how drug deals -- based upon his training and experience, then he's getting into the expert range, and that's what we're objecting on because we're not able to prepare to rebut that. |
| State: | Your Honor, if I may, a lay witness can -- a fact witness can give their opinion. |
| The Court: | **I think this officer can give an opinion based upon his experience. He's worked for -- been an agent for MBN for over four years.** |
| Defense: | It's two and a half, Judge, but -- |
| The Court: | Two and a half years. |
| Defense: | We would object to him being able to give opinion testimony other than to -- observations that he -- as he observed whatever facts he's going to testify about. |
| The Court: | All right. Well, your objection's noted. It will be overruled. He'll be subject to cross-examination. |
| State: | Thank you, Judge. |
| State: | During these types of conversations between somebody wanted to purchase and somebody wanting to see narcotics, it is standard -- the normal course of business, I guess, code words or synonyms to be used rather than people to say, I |

8

|  |  |
|---|---|
|  | want one ounce of cocaine, and the seller to say, I will sell you one ounce of cocaine? |
| Agent Grogan: | Yes, sir. |

(emphasis added).

¶18.   In overruling the defense's objection, the trial court determined that Agent Grogan was able to render his opinion based on his experience as a MBN agent.  The Mississippi Court of Appeals was faced with a factually similar situation.  In *Jones v. State*, 754 So.2d 476, 484 (Miss. Ct. App. 1999), the defense asserted that Detective Steve Renfroe presented expert testimony without being qualified as an expert.  Detective Renfroe's testimony explained how he determined what evidence was relevant and what should be recovered from a crime scene.  *Id*.  Detective Renfroe also provided testimony explaining why the scales, the walkie-talkies and the metal detector all had evidentiary value in a narcotics arrest.  *Id*.  The court found "that Detective Renfroe did not give an opinion as contemplated in Mississippi Rule of Evidence 702.  Instead, he answered questions based on his experiences as a narcotics officer."  *Id*.

¶19.   This Court finds that the trial court did not commit reversible error in allowing Agent Grogan to testify, based on his experience as a narcotics agent for the MBN transactions, that it was not uncommon for there to be use of code to disguise the drug transaction.  This issue is without merit.

### C.   Thompson's Testimony

¶20.   Easter contends that the trial court committed reversible error by stating to Thompson during his direct examination by the State, "Let's just get on to this transaction, please."  It

is necessary to examine the comment in the proper context. The record reflects the following

exchange:

| | |
|---|---|
| State: | Chris, if we can back up a little bit. But how did all this come about? How did you know you were supposed to meet him? |
| Thompson: | I had talked to him on the phone. |
| State: | Okay. When did you talk to him? |
| Thompson: | Around lunch. |
| State: | Okay. And who was present when you made that phone call? |
| Thompson: | Neil Grogan and Alan Ward. |
| State: | And do you remember where you were? |
| Thompson: | At the MBN office. |
| State: | And during that conversation around noon, tell us a little be about what happened, what the conversation was about. |
| Thompson: | **He said he couldn't -- wasn't able to get in touch with me and my phone had been messed up. He asked about some other transactions that we –** |
| Defense: | Objection. We need to be heard outside the presence of the jury. |
| The Court: | **All right. Sustained. Let's just get on to this transaction, please.** |
| State: | Chris, just dealing with this particular transaction, did you and Mr. Easter agree to meet somewhere? |
| Thompson: | Yes. |
| State: | And where was that? |
| Thompson: | At the Apple store on Highway 19 South. |
| State: | And did you -- what did you talk about doing at the Apple store? |
| Thompson: | Trading some money for cocaine. |

(emphasis added).

¶21. Clearly, Thompson was already testifying as to the transaction in question that

involved Thompson working with MBN as a confidential informant to arrange an exchange

with Easter. The trial court's comment was an immediate response to the defense's objection

to Thompson discussing other transactions he had with Easter. The trial court's comment

was made to instruct Thompson to testify only as to the transaction in question. Obviously,

10

the jury was aware that the State had alleged that a transaction of cocaine for money had occurred. The trial court only acted to limit testimony to one transaction in question. The trial court did not offer a finding that a drug deal had definitely occurred. We find that this issue is without merit.

¶22. Next, Easter contends that the trial court committed reversible error when it commented on the quality of the tape recording of the telephone conversation. The trial court, outside the presence of the jury, played the tape recording of the two telephone conversations before allowing the tape to be played to the jury. The record reflects that the defense's objection to the tape of the telephone conversation was to exclude the introductory part of the recording as "the first part of the tape is going to get into 404 (b) activity."[1]

¶23. The trial court ordered the deletion of the introduction part of the conversation before the tapes could be played to the jury. The trial court also commented on the poor quality of the tape outside the presence of the jury. The trial court found that the tape was offered to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, and under M.R.E. 403, the tape was certainly relevant and more probative than prejudicial.

---

[1] M.R.E. 404 (b) provides:

> (b)     Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

11

¶24.    It is after the conference outside the presence of the jury that the alleged error

occurred when the jury was brought back into the courtroom and Thompson resumed his

testimony.  The record reflects the following transpired:

| | |
|---|---|
| The Court: | Mr. White, you want to bring the jury in, please.<br>(THE JURY RETURNED TO THE COURTROOM AT 10:05 A.M., AND THE PROCEEDINGS RESUMED AS FOLLOWS, TO-WIT:) |
| The Court: | Ms. Heidelberg [State], you may proceed. |
| State: | Yes, sir. Judge, at this time, we'd like to play the tape for the jury, please.... |
| The Court: | Yes, sir.<br>(AUDIOTAPE BEING PLAYED FOR THE JURY.) |
| State: | Okay. Chris, let me ask you just a few questions about that. What exactly was that that the jury just heard? |
| Thompson: | It's a conversation between me and Baron. |
| State: | Okay.  And I notice that you didn't call him Baron.  What did you call him when you placed the phone call? |
| Thompson: | "B." |
| State: | Okay.  And you didn't identify yourself -- well, how did you identify yourself? |
| Thompson: | As "C." |
| State: | Okay.  So what does "B" stand for? |
| Thompson: | Baron. |
| State: | And "C" stands for? |
| Thompson: | Chris. |
| State: | Okay.  You didn't hold a conversation with him -- a drug-related conversation with him during that particular phone call, and why not?  What happened? |
| Thompson: | He wanted to call me back.  For whatever reason I don't know. |
| State: | Okay.  And did he call you back? |
| Thompson: | Yes... |
| State: | Judge, if we may proceed with the telephone call that was placed back to Chris. |
| The Court: | Okay.<br>(AUDIOTAPE BEING PLAYED FOR THE JURY.) |
| State: | And, Chris, during that conversation when Mr. Easter called you back, did you all discuss -- well, what did you discuss at that particular time? |
| Defense: | Objection, your Honor.  Under the Best Evidence Rule, the tape speaks for itself.  For this witness to then interpret his |

12

understanding of the tape is improper bolstering. They've entered this into evidence, and the jury's free to examine it at their leisure and give it whatever weight and credibility they determine, but this is improper.

The Court: All right. Your objection's going to be overruled. **The quality is not that great. This witness will be subject to cross-examination. He was part of the conversation, so I'll allow you to ask him questions about the contents of that tape....**

The Court: You may answer the question.

(emphasis added).

¶25. In *Stromas v. State*, 618 So.2d 116, 119 (Miss. 1993), this Court stated:

Certainly a tape recording of the alleged drug transaction is relevant. *See Miss. R. Evid. 401*. The tape's admission makes the drug transaction more likely to have taken place. *See Butler*, 592 So.2d at 984.

¶26. Tape recordings may be received into evidence as long as the proper predicate has been established. *Middlebrook v. State*, 555 So.2d 1009, 1012 (Miss. 1990). "The mere fact that portions of a recording are unintelligible does not by itself render the recording inadmissible." *Middlebrook*, 555 So.2d at 1012; *Frank v. State*, 749 So.2d 1241, 1243 (Miss. Ct. App. 1999). *See also Oatis v. State*, 726 So.2d 1230, 1235 (Miss. Ct. App. 1998). Transcripts provided to the jury to follow along with the tape recording have also been allowed. *See Frank*, 749 So.2d at 1243 (transcripts can be used to assist the jury in determining who is speaking and discerning what is being said).

¶27. This Court finds that the trial court's comment did not indicate its leaning toward the State's witness nor was it likely to influence the jury's verdict. This issue is without merit.

## II. Mistrial

¶28. On appeal, Easter contends that the trial court should have granted a mistrial based on Thompson's testimony that mentioned other transactions. The State did not question

Thompson regarding any other transactions to prompt Thompson's response. When Thompson state, "He asked about some other transactions...," the trial court sustained the defense's objection. Thompson did not state any details regarding other transactions. This was fully discussed in the previous issue. In this issue, Easter approaches the issue from the standpoint of whether a mistrial was appropriate based on the comment.

¶29. In *Caston v. State*, 823 So. 2d 473, 492 (Miss. 2002), this Court set out the standard of review for a motion for mistrial as follows:

> "Whether to grant a motion for mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for mistrial is abuse of discretion." *Pulphus v. State*, 782 So.2d 1220, 1222 (Miss. 2001)(citations omitted); *Spann v. State*, 771 So.2d 883, 889 (Miss.2000); *Johnson v. State*, 666 So.2d 784, 794 (Miss. 1995); *Hoops v. State*, 681 So.2d 521 (Miss. 1996). "The failure of the court to grant a motion for mistrial will not be overturned on appeal unless the trial court abused it discretion." *Bass v. State*, 597 So.2d 182, 191 (Miss. 1992).

Indeed, the Uniform Circuit and County Court Rule 3.12 concerning mistrials states:

> Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case.

¶30. Upon motion of a party or its own motion, the court may declare a mistrial if:
   1.  The trial cannot proceed in conformity with law; or
   2.  It appears there is no reasonable probability of the jury's agreement upon a verdict.

¶31. Besides sustaining the defense's objection, the trial court prepared and offered to grant a limiting instruction to the jury. The defense refused the instruction as a strategic decision. The record reflects:

14

| | |
|---|---|
| The Court: | All right. Those will be given. I prepared another instruction. There was some testimony during -- taken during Chris Thompson's testimony. It was very limited that dealt with maybe some prior transactions between Chris Thompson, the C.I., and this defendant. There was an objection made. We moved on. I sustained it, and nothing else was said about that. In an abundance of caution, I'm offering C-8 at the bottom which is a limiting instruction, under 404 (b) instruction if the defendant wants it given. If you don't want me to give it, then I will not give it. Mr. Parrish, what's your position on this? |
| Defense: | Your Honor, based upon the Court's prompt action hearing the objection, I think we would only be harmed by reminding the jury of that, and I would ask the Court not to give it. |
| The Court: | All right. Then I will not give it. It will be refused. All right. That concludes the Court's instructions. |

The defense did not renew any motion for a mistrial.

¶32. Here, the facts demonstrate that the trial court acted properly in accordance with our holding in *Smith v. State*, 656 So.2d 95, 100 (Miss. 1995). In *Smith*, this Court stated that the trial court should grant a limiting instruction if M.R.E. 404 (b) evidence is admitted and passes the M.R.E. 403 hurdle, unless the party objecting to the evidence refuses to allow the court to give the limiting instruction. *Id*. In *Smith*, the State argued that the defense should be allowed the option to refuse the cautionary instruction to avoid further mention of the past acts if they choose to do so. *Id*. at 99. The Court stated specifically:

> We have promulgated M.R.E. 105 which clearly contemplates that restrictive instructions be given upon request and as the Comment acknowledges, that in the absence of a request, there is no error. M.R.E. 105 and Comment. We are loath to reverse for plain error in the face of a rule so clear. We say for the future, however, that wherever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to MRE 403 balancing analysis and a limiting instruction. The court shall conduct an MRE analysis and, if the evidence passes that hurdle, give a limiting instruction unless the party objecting to the evidence objects to giving the limiting instruction.

*Id*. at 100.

¶33. The Mississippi Court of Appeals held that the harmless error analysis is not precluded when the trial court fails to give a required instruction even where M.R.E. 404 (b) evidence was given. *Lindsey v. State*, 754 So.2d 506, 515 (Miss. Ct. App. 1999). Furthermore, *Lindsey* reiterates our holding in *Smith*, stating:

> In support of his contention that the trial court's failure to give a cautionary instruction warrants reversal, Lindsey cites *Smith v. State*, 656 So.2d 95 (Miss. 1995). We point out that *Smith* does not mandate a reversal for failure of the trial judge to give a cautionary instruction even though we said as much in *Moss v. State*, 727 So.2d 720, 725 (Miss. Ct. App. 1998). As stated earlier in this opinion, *Smith* does hold that once an objection is made to 404(b) evidence, as was done here, the trial court should *sua sponte*, give a limiting instruction unless objection is registered by the defense.

*Lindsey*, 754 So.2d at 515.

¶34. It is a well-settled rule in this State that a mistrial is reserved for those instances where the trial court cannot take any action which would correct improper occurrences inside or outside the courtroom. *Walker v. State*, 671 So.2d 581, 621 (Miss. 1995). "[T]rial judges are peculiarly situated so as to decide (better and more logically than anyone else) when a trial should be discontinued." *Davis v. State*, 530 So.2d 694, 697 (Miss. 1988) (quoting *Schwarzauer v. State*, 339 So.2d 980, 982 (Miss. 1976)).

¶35. As the defense refused to allow the trial court to grant the limiting instruction and based on the trial court immediately sustaining the defense's objection, this issue does not merit reversal.

### III. Denial of Directed Verdict

¶36.    In ***Jefferson v. State***, 818 So.2d 1099, 1110-11 (Miss. 2002), this Court held that the standard of review for denials of motions for directed verdict, judgment notwithstanding the verdict and a request for a peremptory instruction is the same.  A directed verdict, judgment notwithstanding a verdict and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial.  ***Id***.  "Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court.  This occurred when the Circuit Court overruled [the] motion for JNOV."  ***McClain v. State***, 625 So.2d 774, 778 (Miss. 1993) (citing ***Wetz v. State***, 503 So.2d 803, 807-08 (Miss. 1987)).  *See also **Edwards v. State***, 800 So.2d 454, 462 (Miss. 2001) (The standard of review for a JNOV and a directed verdict are the same and implicate the sufficiency of the evidence.  All challenge the legal sufficiency of the evidence.  The appellate court properly reviews the ruling on the last occasion the challenge was made in the trial court, when the Circuit Court overruled the JNOV.).

¶37.    The trial court granted a directed verdict as to the sale within 1,500 feet of Bonita Lakes Park.  However, the trial court denied the motion for directed verdict as to the sale.  Easter argues that the trial court erred in denying his motion for directed verdict as to the sale of cocaine.  Easter contends that the State did not prove all allegations contained in the indictment.  Easter claims that the State did not prove that Easter sold cocaine to Agent Grogan.  The trial court denied the motion stating:

> The Court:    The jury is out.  You may make your motion.
> Defense:      Your Honor, at this time, we'd make a motion for a directed verdict of acquittal based primarily on two lacks of evidence. The State hasn't reached their prima facie burden in showing that Easter sold anything to Agent Neil Grogan.  The testimony

was that money was supplied to Grogan who then gave it to the confidential informant who then handed it to Baron Easter, and Baron Easter then either handed it or tossed it back into the vehicle which landed in the informant's lap. In the indictment, Mr. Easter was charged with selling to both of them, and there's been no evidence, not even to a prima facie level that he sold or delivered anything to Agent Grogan. Therefore, because the State has to meet each and every element as they allege in the indictment, then we're entitled to a directed verdict of acquittal. Likewise, they have not proved any sale within 1500 feet of a public park. There's been no testimony that Bonita Lakes is a public park or that the sale took place within 1500 feet of that public park.... But in the indictment, an element of this offense and what the State has been telling the jury since opening argument, since voir dire is that an element of this crime was within 1500 feet of a public park. They made this an element of the crime. They have produced no evidence. They haven't met their burden, and we're entitled to a directed verdict of acquittal....

State:          Yes, sir. Judge, the 1500 feet is for enhancement purposes in this. All it does is substantiate the sentence and make it a doubling factor. Also, it is proper for the evidence -- the indictment to conform to the evidence presented at trial which is completely proper. There's no surprise to the defendant that he was charged with selling cocaine. It would have been an additional measure of defense to defend on those grounds; but as for an acquittal, no, sir. The 1500 feet, we submit a prima facie case has been proven that it is just right -- at trial, that the park is within 1500 feet of the location of the sale. However, it is for enhancements purposes only as to sentencing. That's its only purpose. And along those lines, we have met our prima facie case as to all elements contained in the indictment. If you don't feel that we've proven 1500 feet, the indictment can conform to the evidence presented at trial.

The Court:      What about the evidence as to any cocaine being sold to Agent Grogan?

State:          Judge, it's sell or transfer approximately 20.25 grams. Now, the -- I think the Supreme Court has been very broad in their definition of a transfer, and because of this type of trade, the drug trade, that they can deliver or transfer these narcotics passing from person to person. It equivocates to a transfer. It went to the confidential informant -- went to the informant and then to Mr. Easter -- no, I'm sorry -- then to Agent Grogan.

18

The Court:   I mean, I don't think it's a big deal.  The sale was -- the money was given from Grogan to the C.I. to the defendant, and the defendant gave the dope from him to the C.I. who gave it to then Agent Grogan, so I guess we'll take that up on instructions.  But motions on directed verdicts, the test that the Court uses is all evidence that has been introduced by the State is to be accepted as true together with all sound or reasonable inferences that may be drawn from the evidence and to disregard evidence favorable to the defendant.  If there is sufficient evidence to support the jury's verdict of guilty, then the motion for a directed verdict must be denied.  I'm going to grant it as to the sale taking place within 1500 fee of a park even through it's in the indictment.  The Court will give an instruction on the essential elements to sale of cocaine only and delete that part in the instructions.

¶38.    In *McClain v. State*, 625 So.2d at 778, this Court stated that when the sufficiency of the evidence is challenged, the prosecution was entitled to have the evidence in support of its case taken as true together with all reasonable inferences.  Furthermore, this Court in *Noe v. State*, 616 So.2d 298, 302 (Miss. 1993), held that when the sufficiency of the evidence is challenged the evidence favorable to the State must be accepted as true with all reasonable inferences, disregarding evidence favorable to the defendant.  The Court stated:

> In judging the sufficiency of the evidence on a motion for directed verdict, or request for peremptory instruction, the trial judge is required to accept as true all of the evidence that is favorable to the state, including all reasonable inferences that be drawn therefrom, and to disregard evidence favorable to the defendant.  *Clemons v. State*, 460 So.2d 835 (Miss. 1984).

616 So.2d at 302.

¶39.    In the case sub judice, Agent Grogan and Thompson identified Easter as the person from whom they purchased the powder cocaine on May 22, 2001.  They had no doubts that this was the person from whom they purchased cocaine for $800.  State's Exhibit 2 was identified by Goodman as being 20.25 ounces of cocaine.  Easter did not testify or present

19

any witnesses in his behalf. Both Agent Grogan and Thompson testified, corroborating each other, that the cocaine in the cloth was passed from Easter to Thompson and from Thompson to Agent Grogan, who then kept it in his custody and control until it could be scientifically identified by appropriate test at the Mississippi Crime Laboratory. The evidence is legally sufficient to support the sale of cocaine part of the indictment in this case. The trial judge did not err in denying the motion for directed verdict as to the sale of cocaine. Accordingly, this Court finds that this issue is without merit.

## IV. *Batson*

¶40. Easter argues that the State's use of its peremptory challenges violated ***Batson v. Kentucky***, 476 U.S. 79, 85-86, 106 S.Ct. 1712, 1716-17, 90 L.Ed.2d 69, 80 (1986). Easter states in his brief that 10 of the 35 venire persons were black. The record reflects that the petit jury was composed of 9 whites and 3 blacks.

¶41. On appeal, Easter takes issue with the State's line of questioning on voir dire that inquired into whether any close friend or relative had a felony conviction. The State also inquired as to misdemeanor convictions. The record reflects that the State's line of questioning was to determine if any of the prospective jurors had any bias or hard feelings against law enforcement or prosecutors. The State also asked the prospective jurors if any of them had personally been victims of a crime and whether that experience would affect their ability to be impartial.

¶42. On appeal, Easter focuses his argument on whether that the trial court should have conducted a ***Batson*** hearing when the State struck Juror 11, Earma Grady.[2] During voir dire, Juror 11 had informed the trial court that one of her relatives had been convicted for murder in another jurisdiction. The record reflects that the defense voiced no objection to the State's use of a peremptory strike as to Juror 11. In fact, there was no objection to any of the State's peremptory strikes. Likewise, there was no objection by the State to any of the defense's peremptory strikes. The record provides:

| | |
|---|---|
| The Court: | All right. The State needs to submit a panel of 12 to the defendant.... |
| State: | Strike 2, strike 5. |
| The Court: | Wait a minute. 2 is S-1. 5 is S-2. |
| State: | 8. |
| The Court: | 8 is S-3. |
| State: | 11. [Earma Grady] |
| The Court: | 11 is S-4. |
| State: | Accept through 17. |
| The Court: | One, two, three, four, five, six, seven, eight, nine, ten, eleven and twelve. All right. Mr. Parrish (Defense), you only have to announce through Number 17. |
| Defense: | Strike 3. |
| The Court: | 3 will be D-1. |
| Defense: | 7. |
| The Court: | 7 will be D-2. |
| Defense: | 9. |
| The Court: | 9 will be D-3. |
| Defense: | And 17. |
| The Court: | 17 will be D-4. Eight jurors. We need -- |
| State: | Judge, about 18, I don't know if we anticipate this going to Wednesday. |

---

[2] The record reflects that an exchange occurred between the State and Juror 11, Earma Grady, where the State effectively apologized for having to ask the same questions more than once to the same jury pool in drawing their juries and for requiring that the prospective jury pool spend its day with them. The record is silent as to what reaction might have prompted the exchange. However, this Court finds that this could have factored into the State's reason for exercising one of its peremptory strikes on Juror 11.

| | |
|---|---|
| The Court: | All right. She's been excused for Wednesday. |
| Defense: | Judge, I can't see it going until Wednesday, but out of an abundance of caution, I don't mind. |
| The Court: | Do y'all have any -- all right. I'll excuse her for cause. I don't know that we're going to be through by Wednesday. We might be. All right. We've got eight jurors. We need four more starting with Juror Number 19. What says the State? State has used three strikes -- four strikes. |
| State: | Take the next four, Judge. |
| The Court: | State takes 19, 20, 21 and 22. Mr. Parrish, the defendant has used four strikes also. |
| Defense: | We'll strike 19. |
| The Court: | 19 will be the defendant's fifth strike. |
| Defense: | And 21. |
| The Court: | 21 will be the defendant's sixth and final strike, so that gives us -- that puts 20 as the ninth juror and 22 as the tenth juror. Andy, 23 and 24? |
| State: | One moment, please, Judge. |
| State: | Strike 24, Judge. |
| The Court: | 24 will be the State's fifth strike. |
| State: | Accept 26. |
| The Court: | You take 23 and 25? |
| State: | 25 was struck for cause, wasn't she, Judge? |
| The Court: | Yeah. |
| State: | 23 and 26. |
| The Court: | 23 and 26. All right. We need two alternates starting with 27 and 28. What says the State? |
| State: | Strike 27. |
| The Court: | All right. The State uses its alternate strike on 27. Steward, 28 and 29? |
| Defense: | Judge, that's acceptable with us. |
| The Court: | Okay. 28 will be the first alternate. 29 will be the second alternate. All right. For the record, the jury will be composed of Jurors Number 1, 4, 6, 10, 13, 14, 15, 16, 20, 22, 23, 26. The first alternate will be 28. The second alternate will be 29. I'll go out and announce the jury, give the jury some instructions, swear in the bailiff. We'll hear opening statements, invoke the rule before we do opening, and then we'll see where we are timewise. Okay? |

¶43. In *Conner v. State*, 632 So.2d 1239, 1264 (Miss. 1993), the Court stated that failure

to object to the prosecution's use of peremptory strikes waived this issue on appeal:

We cannot address this issue because Conner never objected to the prosecution's peremptory challenges. This has often held that a party waives any and all claims regarding the composition of his jury if he fails to raise an objection before the jury is sworn. *See Shaw v. State*, 540 So.2d 26, 27 (Miss. 1989). *Thomas v. State*, 517 So.2d 1285, 1827 (Miss. 1987).... The error if any is precluded from review.

¶44. The line of questioning by the State was clearly not improper. Therefore, we are only left to discuss the peremptory strikes in the record. Since there is no objection to the use of the peremptory strikes or any record to review on appeal, this Court finds that this issue is without merit.

## V. Effective Assistance of Counsel

¶45. Easter argues that his trial counsel, Attorney Parrish, provided ineffective assistance of counsel in representing him. The law regarding ineffective assistance of counsel is well settled. We have stated that:

> The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The test is two pronged: The defendant must demonstrate that his counsel's performance was deficient, and that the deficiency prejudiced the defense of the case. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Washington v. State*, 620 So.2d 966 (Miss.1993). 'This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.' *Stringer v. State*, 454 So.2d 468, 477 (Miss.1984), citing *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064. 'In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' *Stringer* at 477, citing *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *State v. Tokman*, 564 So.2d 1339, 1343 (Miss.1990).

23

Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' *Stringer* at 477; *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. In short, defense counsel is presumed competent. *Johnson v. State*, 476 So.2d 1195, 1204 (Miss.1985); *Washington v. State*, 620 So.2d 966 (Miss.1993).

Then, to determine the second prong of prejudice to the defense, the standard is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991). This means a 'probability sufficient to undermine the confidence in the outcome.' *Id*. The question here is whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068.

There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988); *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State*, 584 So.2d 426 (Miss.1991).

*Foster v. State*, 687 So.2d 1124, 1129-30 (Miss. 1996).

### A.    Defense Counsel Statements

¶46.   Easter takes issue with two statements made by Attorney Parrish at trial. First, Easter alleges that during voir dire, Attorney Parrish instructed the prospective jury that it would require the jury to find some "technicality" to find Easter not guilty. This is not accurate.

Not taking the statement out of context, the record reflects that Attorney Parrish actually questioned the jury as follows:

Parrish:   Does everybody on the panel understand that everything you just heard right there wasn't evidence?  The only evidence you're going to hear in this case, the only evidence that you could consider is the evidence that you hear from that witness standing (indicating); not what I say, not what Vel or Andy says.  Does everybody understand that?
           (NO RESPONSE)

Parrish:   Does everybody understand that the State's burden is to prove every element of the crime beyond a reasonable doubt; and by that I mean, should they fail to prove one element even though you find the other ones, does everybody understand that even though that might be what we call a technicality, it would be your duty as a juror to come back with a not guilty verdict?  Does anybody have a problem with technicalities in the law?
           (NO RESPONSE)

Parrish:   By your silence, I'm assuming that you understand that if one part doesn't get proven, then it's not guilty even thought you believe everything else?
           (NO RESPONSE)

We find that the question taken as a whole and in the proper context did not instruct the jury that it would take a "technicality" to find Easter not guilty as claimed on appeal.  Therefore, this statement did not constitute ineffective assistance of counsel.

¶47.   Second, Easter alleges that Attorney Parrish lent credibility to the State's case by stating in his first sentence on opening statement that, "Well, Mr. Davis pretty much laid out the facts as I understand them from discovery."  Again, placing the statement back in the proper context of the complete opening statement, Attorney Parrish's clearly does not concede Easter's guilt.  Attorney Parrish's opening statement emphasized that there were conflicts in the evidence and a lack of evidence that would create reasonable doubt.  In order

25

to review the statement in the proper context, the record reflects that Attorney Parrish's complete opening statement was as follows:

Well, Mr. Davis pretty much laid out the facts as I understand them from discovery. That still doesn't mean that they have proven anything yet. I anticipate when the evidence is done and the Judge instructs you on the law, he'll talk to you about reasonable doubt, and he's going to tell you that reasonable doubt can arise from lack of evidence. It can arise from a conflict of evidence.

Now, like the Judge said, I can't predict what's going to happen in this case. We don't have depositions in criminal cases in Mississippi, so I don't know exactly how the testimony is going to be developed from the witness stand, but I anticipate there's going to be some conflict in the evidence; that one person's going to say, you know, it was black, and the other person is going to say that is was white. One person is going to say that is was one thing, and another person is going to say that's another thing. That's the conflict in the evidence, and that -- if you're looking for it and you see, it can give rise to reasonable doubt.

Again, there's going to be, I believe, a lack of evidence. You're going to hear about this tape of this alleged sale, and we've listened to this tape today. It's about eight seconds long, and you're going to have the opportunity to hear it. What you're not going to hear is any conversation of saying, Here's $800; here's three-quarters of an ounce of cocaine. That's not going to happen. You're going to hear two voices for about eight seconds; one of them saying, Hey, how you doing? The other one saying, I'm good; how you doing? Okay. See you later. That's it.

Now, the primary proof that the State's going to be using I anticipate is going to be the testimony of this Thompson boy. Okay? And I anticipate that his testimony is going to be developed perhaps on direct but for certain on cross-examination by me talking about how he got to where he was working as a snitch for the cops. And the fact of the matter is he's the drug dealer. Okay? He's the drug dealer. He got caught....

And he's going to testify about his illegal activities and how he got arrested; and in turn for getting a lenient sentence, he worked off -- okay -- he worked off his -- some of his punishment. And part of working that off was to make sure that this man (indicating) was charged with this crime.

Now, like I said, I don't -- I can't anticipate everything that's going to happen, but I can tell you two things based upon trying cases for several years; that is, there's going to be conflict. There's no doubt about it. There's going to be a lack of evidence. The State's already admitted -- those surveillance agents, the guys that were surveilling him didn't see what happened. There's no video. There's no money. There's no fingerprints. What you've got is a

26

convicted felon and a drug agent who saw Mr. Easter for the first time that day, an unidentified black man; so we've already got at least one other suspect that was sitting in the truck. We don't know who that was. We don't even know that Baron Easter was there. He's just charged with being there. That's what I'm telling you, conflict and lack of evidence. And when it's over, there's reasonable doubt. And if there's reasonable doubt, by you oath, you must acquit. Thank you.

Clearly, the opening statement focused on reasonable doubt and raised possible conflicts and questions in the evidence. Again, this Court finds that taking the statement in the proper context and reviewing the complete opening statement, the statement did not constitute ineffective assistance of counsel.

## B. Lack of Objection

¶48. Easter also contends that the defense counsel failed to aggressively defend him at trial. First, Easter alleges that Agent Grogan was allowed to give hearsay from Thompson that Easter was his drug source. The record reflects that following exchange:

| | |
|---|---|
| State: | [W]ere you working with MBN... in an undercover operation on May 22nd, 2001? |
| Agent Grogan: | Yes, sir. |
| State: | And what other officers were involved with that operation? |
| Agent Grogan: | Agents Alan Ward and James Reagan. |
| State: | Who else was involved with that operation? |
| Agent Grogan: | The C.I. |
| State: | And who was that? |
| Agent Grogan: | Chris Thompson. |
| State: | And what was the plan for that day? |
| Agent Grogan: | We contacted an individual. |
| State: | Who was the individual? |
| Agent Grogan: | Baron Easter. He was going to sell us an ounce of powder cocaine for $800. |
| State: | All right. Who made this call? |
| Agent Grogan: | Chris Thompson did. |
| State: | Okay. Now, can you tell the jury why -- why Chris was working for you, Neil? |

27

Agent Grogan:     Chris has been arrested earlier that month on a drug charge, and he was going to help us get his source.

¶49. In his testimony Thompson confirmed that he supplied Easter's name to the MBN to set up a sting. The record reflects the following:

State:     [O]n or about May 22nd, 2001, were you involved with the Mississippi Bureau of Narcotics?

Thompson:     Yes....

State:     Okay. And I guess because of your -- Well, why were you -- how would you be able to do that? Why were you able to get in to get other drugs?

Thompson:     Because I was selling it....

State:     What, if any, plan did you have on May 22nd that involved the Mississippi Bureau of Narcotics?

Thompson:     I was supposed to get in contact with Baron Easter and set up a buy.

State:     Okay. And when you say you were supposed to get in contact with Baron Easter, now, earlier you said you had worked out a deal where you were trying to get drugs for them. Did you give them the information, the name of Baron Easter; or did they provide that name for you?

Thompson:     I gave it to them.

State:     Okay. So Baron Easter was someone that you had contact with?

Thompson:     Yes.

¶50. Thompson's testimony provided that he supplied Easter's name to the MBN to arrange a transaction to get drugs. Agent Grogan testified that the purpose of working with a confidential informant was to get the informant to help arrange sting operations to apprehend other violators. We find that not objecting to Agent Grogan's statement, "he was going to help get his source," did not amount to ineffective assistance of counsel.

¶51. Second, Easter also contends that the trial counsel did not aggressively defend him by not objecting to Agent Grogan's account about "something else later on in the week." However, what the "something else" was not stated. Agent Grogan did not say that it

28

involved another drug transaction. Also, the State did not ask Agent Grogan as to any other conversation. The record reflects the following exchange:

| | |
|---|---|
| State: | After you received the dope, what happened -- or I'm sorry-- the suspected substance, what happened? |
| Agent Grogan: | Mr. Easter and Chris Thompson had a little discussion about something else later on in the week, and then we left and went down Highway 19 and got back on the interstate going toward our office. |

Besides the fact that the "something else" was not identified or referenced as any other drug activity, it is also reasonable that the trial strategy was to avoid drawing further attention to the statement. This Court finds that this did not constitute ineffective assistance of counsel.

¶52. Third, Easter alleges that the trial counsel did not raise any disparity in treatment between Thompson and Easter. However, Attorney Parrish did attempt to discredit Thompson as a witness. The record reflects the following:

| | |
|---|---|
| Parrish: | Now, let's talk about the reason that you're testifying here today. You got arrested for selling drugs? |
| Thompson: | No, sir. |
| Parrish: | You got arrested for possessing a -- possession with intent to sell drugs? |
| Thompson: | Yes, sir. |
| Parrish: | Okay. And they told you that if you didn't snitch on other people, they'd send you to prison for 20 or 30 years; is that correct? |
| Thompson: | No. |
| Parrish: | Okay. What did they tell you? |
| Thompson: | They told me that I would have a better chance if I helped them. They didn't tell me I had to snitch. They didn't force me to or anything like that. |
| Parrish: | They didn't force you to snitch? |
| Thompson: | No. |
| Parrish: | Okay. And you've pled guilty to a felony? |
| Thompson: | Yes, sir. |
| Parrish: | Drug felony? |
| Thompson: | I did. |

29

| Parrish: | And you got a probationary sentence; correct? |
| Thompson: | Yes, sir. |
| Parrish: | And that was because of your help in this investigation is that correct? |
| Thompson: | Yes. |
| Parrish: | So it would be safe to say to avoid prison, you're willing to turn in anybody that you could find to save yourself; is that correct? |
| Thompson: | No. |

We find that this allegation is without merit.

### C. Previously Addressed Issue

¶53. Easter argues that it amounted to ineffective assistance of counsel for his counsel not to have made a ***Batson*** challenge when Juror 11 was struck. The lack of a ***Batson*** challenge was addressed in issue IV. Therefore, we will not address it again in detail. However, there were 10 blacks out of the 35 venire panel. Three out of the 12 jurors that served were black. Easter only contests the State's use of its peremptory challenge as to Juror 11. As discussed in Issue IV, there was no error in striking Juror 11. Alternatively, as discussed in footnote 2 in issue IV, there was an exchange between the State and Juror 11 during questioning. This Court finds that in the case sub judice the lack of a ***Batson*** challenge does not merit reversal.

### D. Pretrial Hearing

¶54. Finally, Easter alleges on appeal that trial counsel should have requested a pretrial hearing on whether Easter's 2 prior drug convictions could be used for impeachment if he took the stand to testify. However, Easter did not testify at trial so his prior convictions were not introduced to the jury. The prior convictions were only examined by the trial court on sentencing to determine if enhancement for habitual offender status was proper. Whether

Attorney Parrish's decision not to call Easter to testify amounted to ineffective assistance of counsel is the real issue before this Court.

¶55. On appeal, Easter's appellate counsel does not address any possible trial strategy by Attorney Parrish for not calling Easter to testify. For instance, Attorney Parrish may have feared  voice recognition since the State was introducing 2 taped conversations into evidence. Various other possible trial strategy theories may exist to support the decision not to call Easter to the stand. Easter does not present any support in the form of affidavits or any proposed testimony as to any ineffective assistance of counsel. In fact, Easter does not present any evidence of ineffective assistance of counsel to merit reversal.

¶56. In *King v. State*, 679 So. 2d 208, 209-10 (Miss. 1996), the Kings claimed that their attorneys advised them that it would better if they did not testify themselves since they had prior convictions. No witnesses were called to testify by the defense. *Id.* at 210. Citing *Alexander v. State*, 503 So.2d 235, 240 (Miss. 1987) and *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978), this Court held that "[d]ecisions regarding which witnesses to call are peculiarly within the gambit of trial strategy." *King*, 679 So.2d at 211. The Court further stated that:

> The Kings' habitual offender status certainly highlights their 'unlikely status as candidates for the witness stand,' and gives added credibility to counsel's strategy. We do not undertake this opportunity to second guess obvious trial strategy...Nor are we enlightened by the affidavits of the three supposed ready, willing and able other witnesses.

*Id.* at 212. We find that this issue does not merit reversal.

¶57. In conclusion, Easter fails to establish that he received ineffective assistance of counsel at trial. In fact, the record reflects that Easter's trial counsel had a difficult case to

31

defend given the 2 eyewitnesses that testified as to the sale and the taped recorded conversations. Furthermore, in this case, we have the unusual situation of having a record which reflects that Attorney Parrish had negotiated a 15 year non-habitual sentence in exchange for Easter pleading guilty. The record demonstrates that Attorney Parrish advised Easter to take the plea but Easter refused. Attorney Parrish was successful as a result of his motion for directed verdict to have the trial court dismiss the portion of the indictment which dealt with the sale being within 1,500 feet of a public park. Easter fails to establish that his defense was prejudiced as a result of Attorney Parrish's representation.

## CONCLUSION

¶58.    For the foregoing reasons, this Court affirms the judgment of the Circuit Court of Lauderdale County, Mississippi.

¶59.    **CONVICTION OF SALE OF COCAINE AND SENTENCE OF FORTY YEARS (40) IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OR BENEFIT OF PROBATION OR PAROLE, TOGETHER WITH ALL COSTS AND FEES, AFFIRMED. APPELLANT IS GIVEN CREDIT FOR 35 DAYS SERVED.**

  **SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**