BRIDGES, J.,
for the court.
¶ 1. The grand jury of Montgomery County indicted Michael Nason for the crime of armed robbery. A jury trial followed in which the jury returned a verdict of “guilty” for the crime of armed robbery. Nason was then sentenced to serve a term of forty years with the Mississippi Department of Corrections. Soon after, defense counsel filed motions for JNOV or in the alternative, a new trial. The court denied the motions, and Nason appealed to this Court.
STATEMENT OF THE ISSUES
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF MARIUM ANTONIO SMITH?
*790 II. WHETHER THE TRIAL COURT ERRED IN DENYING NA-SON’S MOTIONS FOR JNOV OR IN THE ALTERNATIVE A NEW TRIAL BECAUSE SUCH VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
FACTS
¶ 2. On July 14, 2001, three masked men entered a Piggly Wiggly, in Winona, Mississippi, and armed robbed it of $1,149.96. The record does not reflect the exact time frame between the robbery and the arrest of the individuals involved. At trial, the State called five eyewitnesses to the crime, to testify. The first eyewitness that the State called was Jamilia Stephens, a cashier at the Piggly Wiggly. Ms. Stephens testified that she was present at the scene and witnessed the three men enter, walk around, buy cigarettes and then walk out. Later, they came back into the store carrying guns and a man in a green shirt had a mask over his face. Ms. Stephens also testified that the man in green shot once and told everyone to “get down.” She later identified the man who had worn the green shirt as the defendant, Michael Na-son, and was sure it was him even though he wore a mask.
¶ 3. The next witness the State called was Vera Mitchell. Ms. Mitchell testified that she was in the office, counting money, at the time of the robbery, and it was at that time that a man in a blue shirt came into the office and demanded that she give him money and to open the safe. Keeping her head down the entire time, she informed the man she could not open the safe, but gave him the money she had from the cash drawer and then he left.
¶ 4. Nathan Bevis, an employee of Pig-gly Wiggly, testified that he was present at the scene and witnessed the robbery. He also testified that earlier, three men walked in the store and bought some cigarettes and that later the three men came back and made the robbery. He further identified the defendant as the man in green who fired a gun. Bevis explained that the mask that the man in green wore only covered part of his face, from the nose down and because Bevis got a good look from the nose up he could identify the defendant.
¶ 5. Also called to testify was Kimi Stephens, another cashier at the Piggly Wiggly, who testified that she had been working at the cash register, when she noticed three men come in and buy cigarettes. Later, the same three men came in again but this time to carry out the robbery.
¶ 6. Hank Jones was called to testify on behalf of the State. Jones, a cashier and bag boy, was working on the night of the robbery and testified that the man in a green shirt had a gun, which he fired once, and yelled to everyone to get to the ground.
¶ 7. Also at trial, the State call Marium Antonio Smith, a co-defendant, to testify. Mr. Smith identified Nason as one of the perpetrators of the crime.
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF MARIUM ANTONIO SMITH?
¶ 8. In this first issue Nason, argues that the trial court erred in allowing Smith to testify because Smith’s testimony was unreliable and filled with inconsistencies. Nason also claims that it was error because Smith’s testimony was only given in an effort to avoid a life sentence, thus proving it was self-serving and not credible. Finally, Nason claims that Smith’s testimony was done under fear and duress.
*791 ¶ 9. In Blocker v. State, 809 So.2d 640 (¶ 20) (Miss.2002), the Mississippi Supreme Court held that a trial court has “great latitude in admission or exclusion of evidence where the question is one of materiality or relevancy, and its decision should only be reversed where this discretion is abused.” However, the Court in Johns v. State, 592 So.2d 86, 88-89 (Miss.1991) (citing Jones v. State, 368 So.2d 1265, 1267 (Miss.1979)), stated “that the testimony of an accomplice must be viewed with great caution and suspicion. Where it is uncorroborated, it must also be reasonable, not improbable, self-contradictory or substantially impeached.” Id.
¶ 10. Even though Smith’s testimony should be viewed with caution and suspicion, it was the trial judge’s responsibility to weigh the probative value of the testimony versus the prejudicial aspect of the testimony. Even though Smith’s testimony contained inconsistencies, it is the duty of the jury to determine “the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity.” Noe v. State, 616 So.2d 298, 308 (Miss.1993) (citing Jones v. State, 381 So.2d 983, 989 (Miss.1980)).
¶ 11. Furthermore, the testimony of Smith was not uncorroborated. Testimony can be corroborated by either evidence or by other testimony. The State presented at least two witnesses, all of whom testified closely if not exactly to what Smith testified to. As for the testimony being “reasonable, not improbable, self-contradictory or substantially impeached,” Smith’s testimony was well within reason and not improbable. Smith was even warned about this possibility right before he was to testify and was given the chance to back out of testifying. In addition, Na-son had an opportunity to cross-examine Smith, which would have enabled Nason to bring to light any inconsistencies, ulterior motives, fear or duress.
II. WHETHER THE TRIAL COURT ERRED IN DENYING NASON’S MOTIONS FOR JNOV OR IN THE ALTERNATIVE A NEW TRIAL BECAUSE SUCH VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 12. With regards to the second issue, Nason argues that the verdict is against the overwhelming weight of the evidence in that his conviction is based on the wholly unreliable and self-serving testimony of Smith and the testimony of only two people who said they could positively identify Nason as a robber, even though three-fourths of the robber’s face was covered with a mask.
¶ 13. Our standard of review regarding a motion for new trial is stated in McClain v. State:
The challenge to the weight of the evidence via motion for a new trial implicates the trial court’s sound discretion. Procedurally such challenge necessarily invokes Miss. Unif.Crim. R. of Cir. Ct. P. 5.16. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State.
McClain v. State, 625 So.2d 774, 778 (Miss.1993). See also Collier v. State, 711 So.2d 458, 461(¶ 13) (Miss.1998); Herring v. State, 691 So.2d 948, 957 (Miss.1997). The same standard is used to review overruled motions for a directed verdict and overruled motions for JNOV. See McClain, 625 So.2d at 778; Wetz v. State, 503 So.2d, 803, 808 (Miss.1987). Motions for directed verdicts and motions for JNOV are both for the purpose of challenging the legal suffi *792 ciency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss.1993).
¶ 14. Our standard of review regarding the legal sufficiency of the evidence is as follows:
[W]e must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution- — in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Wetz v. State, 503 So.2d at 808. “The jury is the sole judge of the credibility of witnesses, and the jury’s decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.” Billiot v. State, 454 So.2d 445, 463 (Miss.1984). This Court may not make an assessment on the credibility of the trial witnesses as this task is one for the jury presiding over the matter. Kinzey v. State, 498 So.2d 814, 818 (Miss.1986). When this Court analyzes a jury’s verdict to determine whether it goes against the overwhelming weight of the evidence, we must keep in mind that the jury is the ultimate finder of fact.
¶ 15. This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible. The law provides:
Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
Groseclose v. State, 440 So.2d 297, 300 (Miss.1983).
¶ 16. According to the above standard of review, this Court is supposed to look at the evidence in the light most favorable to the verdict. This was certainly not a difficult task. All of the evidence points to the fact that Nason committed the armed robbery. This Court does not have the responsibility of re-weighing the evidence to determine which witnesses we believe had the most credibility. Although Nason was not required to put on any evidence or witnesses, this Court finds none to consider in this appeal.
¶ 17. It is clear from the record and from Nason’s statements that there was sufficient evidence for the jury to have convicted him. Furthermore, it is the job of the jury to determine which witnesses are credible and which are not.
¶ 18. Nason argues that the testimony of the eyewitnesses differed and that the witnesses could not see the robber’s face because of a mask. However, two of the witnesses were able to identify the defen *793 dant due to the fact that the mask only-covered half of his face, from the nose down, he wore a green shirt, and he had been in the store only minutes before, wearing the same green shirt.
¶ 19. Having had the benefit of hearing the witnesses and observing their demean- or, the jury acted as rational finders of fact and returned a verdict that was supported by the overwhelming weight of the evidence. Nason has failed to present a viable argument that the verdict was against the overwhelming weight of the evidence and that he should be granted a new trial.
¶ 20. Because this Court is charged with accepting all of the State’s evidence as true, including reasonable inferences of truth, we must find that the verdict was not against the overwhelming weight of the evidence and Nason’s motions for JNOV or, in the alternative, a new trial were rightfully denied by the trial judge. Considering this stringent standard of review, for a new trial and the sanctity of the jury verdict, this court finds that Nason’s arguments are without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF MONTGOMERY COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCE IS TO RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONTGOMERY COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.